# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Robert Eliason, | Case No.: 2:17-cv-03017-JAD-DJA |
| Plaintiff | |
| v. | **Order Lifting Stay; Granting Defendant's Motions to Vacate Preliminary Injunction and Dismiss; Denying Plaintiff's Motion to Modify Preliminary Injunction; and Denying Defendants' Motion for Summary Judgment** |
| Clark County and State of Nevada ex rel. Nevada Commission on Peace Officer Standards and Training, | |
| Defendants | [ECF No. 75, 76, 77, 84] |

North Las Vegas Constable Robert Eliason sues Clark County and the State of Nevada's Commission on Peace Officer Standards and Training (POST Commission) for attempting to remove him from office after he failed to become a POST-certified category II peace officer, as required by Nevada Revised Statute 258.007.[1]  After Eliason received a preliminary injunction in state court that prevented his removal from office,[2] and his dispute was removed to this court, I certified a state-law question to the Nevada Supreme Court, asking it to resolve whether NRS § 258.007's forfeiture provision for lack of certification is self-executing or whether Eliason could be removed from office only through a judicial proceeding.[3]  After that Court held that NRS § 258.007's forfeiture provision is self-executing, the County moved to dissolve the preliminary injunction and dismiss Eliason's suit, while the Commission renewed its motion for summary

---

[1] ECF No. 1 (complaint).

[2] ECF No. 42-3.

[3] ECF No. 71.

judgment.[4]  In his opposition to those motions, as well as his motion to modify the preliminary injunction, Eliason argues that even though the Nevada Supreme Court determined that he had forfeited his office by failing to become POST certified, that Court did not resolve whether NRS § 258.007's operation violates Title II of the Americans with Disabilities Act.[5]

Given that the Supreme Court's decision renders the preliminary injunction moot, I grant the County's motion, deny Eliason's motion to modify the injunction, and dissolve it.  I also grant the County's motion to dismiss because Eliason's complaint fails to assert constitutional or statutory causes of action and his requested, equitable relief is no longer available.  Because I dismiss Eliason's complaint, I deny the Commission's motion for summary judgment as moot. But I grant Eliason leave to amend his ADA and constitutional claims in light of the Nevada Supreme Court's decision.

## Background[6]

In January 2015, Robert Eliason assumed office as the North Las Vegas Constable—a position that required him to meet numerous statutory and regulatory requirements.[7]  NRS § 258.007 requires that constables in "certain townships," like North Las Vegas, become "certified by the Peace Officers' Standards and Training Commission" as category II peace officers "within 1 year" of assuming office or, if they can show "good cause" for an extension, within 18 months of assuming office.[8]  Failure to become certified results in automatic forfeiture

---

[4] ECF Nos. 75 (motion to vacate), 76 (motion to dismiss), 77 (renewed motion for summary judgment).

[5] ECF No. 84 (motion to modify).

[6] This is merely a summary of facts alleged in the complaint and should not be construed as findings of fact.

[7] ECF No. 1 at ¶¶ 5, 8.

[8] Nev. Rev. Stat. §§ 258.007(1), (2).

of the position.[9]  The Nevada Legislature tasked the POST Commission with certifying officers

and adopting "regulations establishing minimum standards for the certification" of "peace

officers," including regulations establishing "requirements for basic training for category I,

category II, and category III peace officers."[10]  These certification requirements are enshrined in

Nevada's Administrative Code, and the POST Commission must "award a basic certificate to

any peace officer who" meets certain requirements, including passing "the state physical fitness

examination for the appropriate category of peace officer."[11]  That physical-fitness examination

requires a category II officer to be able to jump a certain height, perform several pushups, run or

walk a certain distance, finish a timed agility test, and "complete not less than 29 sit-ups in 1

minute."[12]  The administrative code also permits "[a]ny administrator of an agency" to "petition

the Commission for a waiver of any provision of this chapter on behalf of an officer."[13]

          In the summer of 2015, Eliason began preparing for the state's physical-fitness test to

become peace-officer certified.[14]  But he found that he could not perform parts of the fitness test

because of his disability, which he characterizes as a "neurological condition."[15]  Recognizing

that he might miss the statutory-certification deadline because he couldn't pass the physical-

fitness test, Eliason sought and received a six-month extension, pushing out his certification

---

[9] *Id.* at § 258.007(3); *see also Clark Cnty. v. Eliason*, 468 P.3d 817, 819 (Nev. 2020) ("We conclude NRS 258.007(2)'s plain language makes the forfeiture self-executing where the constable fails to timely certify as a category II peace officer.").

[10] Nev. Rev. Stat. §§ 289.510(c), (c)(1).

[11] *Id.* at § 289.200(1).

[12] *Id.* at § 289.205(2)(a)–(f).

[13] *Id.* at § 289.370.

[14] ECF No. 77-1 at 14.

[15] ECF No. 1 at ¶ 14.

1  deadline until June 2016.[16]  But he continued to struggle with the physical-fitness requirements

2  of the certification process and failed to become a certified peace officer in the time allotted.[17]

3  So the POST Commission notified the Clark County Board of Commissioners of this failure and,

4  a year later, the Assistant County Manager placed an item on the agenda for the Board's July 18,

5  2017, meeting, which proposed declaring that Eliason had forfeited his office.[18]

6         But before the Board could vote, Eliason sued Clark County and the POST Commission

7  in state court, seeking injunctive and declaratory relief, and asserting that the defendants'

8  attempted enforcement of NRS § 258.007 was unconstitutional and unlawful.[19]  At the time,

9  Eliason's suit turned on whether the defendants could enforce NRS § 258.007's forfeiture clause

10  or whether his removal from office could only occur through an NRS § 35.010 writ-quo-

11  warranto action.[20]  Once the state court entered a preliminary injunction, Eliason amended his

12  complaint to add an ADA claim, which prompted the defendants to remove the suit to this

13  court.[21]

14         After Eliason moved for declaratory judgment, I determined that his case presented a

15  novel issue of state law, which I certified to the Nevada Supreme Court under Nevada Rule of

16  Appellate Procedure 5.[22]  I stayed the suit and denied the parties' then-pending motions, until the

17  High Court's resolution of whether NRS § 258.007's forfeiture provision was self-executing,

18

19  _____

20  [16] *Id.* at ¶¶ 19–20.

   [17] *Id.* at ¶¶ 22–23.

21  [18] *Id.* at ¶¶ 31–32.

   [19] *See generally*, ECF No. 1.

22  [20] *Id.* at ¶¶ 34–46.

23  [21] ECF Nos. 1; 41 at 8–11.

   [22] ECF No. 71.

4

required a writ-quo-warranto action, or could be enforced by the County or POST Commission.[23]   Roughly one year later, the Nevada Supreme Court ruled that the "plain language of NRS 258.007 provides that a constable must become POST-certified and the failure to do so works a forfeiture of the office," meaning that neither the County nor the Commission has "the authority" or "need to declare a forfeiture because that forfeiture occurs automatically upon the constable's failure to timely certify as a category II peace officer."[24]

The County now moves to vacate the preliminary injunction.[25]   It also seeks to dismiss the complaint, and the Commission moves for summary judgment, with both defendants largely arguing that the Nevada Supreme Court's decision nullifies Eliason's suit.[26]   But Eliason opposes those motions and seeks to modify the preliminary injunction, claiming that his suit now turns on whether enforcement of NRS § 258.007 violates the ADA.[27]

## Discussion

### I.    Preliminary injunction [ECF Nos. 75, 84]

Federal Rules of Civil Procedure 54(b) and 60(b)(5) permit a district court to modify interlocutory orders before entry of a final judgment.[28]   "A party seeking modification or

---

[23] *Id.*

[24] *Eliason*, 468 P.3d at 820.

[25] ECF No. 75.

[26] ECF Nos. 76, 77.

[27] ECF No. 84.

[28] Fed. R. Civ. P. 54(b) ("[A]ny order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment . . . ."); Fed. R. Civ. P. 60(b)(5) ("On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding [if] . . . the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable . . . ."); *see also Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1123 (9th Cir. 2005) ("[A] district judge

dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction."[29]  However, "[a] motion to modify or dissolve an injunction cannot be used to challenge the imposition of the original injunction."[30] While both the County and Eliason agree that the Nevada Supreme Court's decision changes this suit's landscape, they disagree as to the extent of that alteration.  According to the County, the High Court's decision requires dismissal of Eliason's claims;[31] to Eliason, it only closed off one path among many and did not affect his ADA claim.[32]

The Nevada Supreme Court's decision obviates the basis for this suit's preliminary injunction, warranting its dissolution.  In its order granting the preliminary injunction, the state-court judge reasoned that "a [q]uo [w]arranto action is the exclusive remedy to obtain a declaration that a forfeiture of public office has occurred by provisions of law, including that in NRS 258.007."[33]  Noting that Eliason would likely succeed on the merits of his suit protesting the defendants' attempts to remove him from office absent that action, that court enjoined the County and Commission "from proceeding during the pendency of this action in voting on or declaring the forfeiture" of Eliason's post or "filling any vacancy in the Office of Constable . .

---

always has power to modify or to overturn an interlocutory order or decision while it remains interlocutory.") (internal quotation marks omitted).

[29] *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (quoting *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000) (internal quotation marks omitted)).

[30] *United States ex rel. F.T.C. v. Bus. Recovery Servs. LLC*, 488 F. App'x 188, 189–90 (9th Cir. 2012) (unpublished).

[31] ECF Nos. 75, 76.

[32] ECF No. 84.  It is entirely unclear whether Eliason believes that his constitutional claims may proceed.

[33] ECF No. 42-3 at 6.

1    . unless such vacancy is declared [by] a Nevada court in writ quo warranto."[34]  But the High

2    Court held that NRS § 258.007's forfeiture provision was automatic and any further proceedings

3    taken by the defendants had no effect on Eliason's status as constable because he has already lost

4    the position by failing to become POST certified.[35]  Thus, not only has the legal basis for the

5    preliminary injunction vanished, but the injunction no longer provides Eliason with a remedy

6    because he has already forfeited his position—regardless of the defendants' votes, declarations,

7    or attempts to fill the vacancy.  So I vacate the preliminary injunction.

8          While Eliason characterizes his motion as one to modify the preliminary injunction, he

9    does not argue that the Nevada Supreme Court's order warrants revision to the preliminary

10   injunction.  Instead, he invokes the standards for issuing a new injunction, arguing that he is

11   likely to succeed on the merits of his ADA claim and will suffer irreparable harm if I permit the

12   defendants to enforce "NRS 258.007's physical agility requirement."[36]  Eliason cites no

13   precedent requiring me to weigh the factors laid out in *Winter v. Natural Resources Defense*

14   *Council, Inc.*, which govern the issuance of a preliminary injunction,[37] in deciding whether to

15   modify an already-established injunction.  But even if I must do so, I find that modification of

16   the preliminary injunction in this case is unwarranted.

17

18   [34] *Id.* at 7.

19   [35] *Eliason*, 468 P.3d at 819 ("Here, however, POST certification is an eligibility requirement, and
     unless the constable contests POST's determination—which Eliason does not do here—judicial
20   proceedings are unnecessary to determine whether the constable has met that statutory
     requirement for holding office.").

21   [36] ECF No. 84 at 3.

22   [37] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1289 (9th Cir. 2013) ("A plaintiff who
     seeks a preliminary injunction must show: (1) that he is likely to succeed on the merits, (2) that
23   he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of
     equities tips in his favor, and (4) that an injunction is in the public interest." (quoting *Winter v.*
     *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (internal quotation marks omitted)).

As discussed below, Eliason is unlikely to succeed on the merits of his claims: (1) the Supreme Court's decision obviates the legal basis for his request for injunctive and declaratory relief; (2) his ADA claim is inadequately pled; and (3) his requested remedies are largely unavailable, given that neither the County nor the Commission have the power to enforce, or refrain from enforcing, NRS § 258.007. Eliason appears to concede as much, failing to even discuss the merits of any claim aside from the alleged ADA violations.[38] This alone warrants dismissal.[39] But I am also not persuaded that Eliason is likely to suffer irreparable injury without preliminary relief because enjoining the Commission and County from "taking any action to remove or replace Constable Eliason"[40] would not affect the forfeiture of his position, which has already occurred.[41] Because Eliason has failed to make a showing on either of these elements, I decline to consider the remaining *Winter* elements,[42] deny his motion to modify the injunction, and dissolve it.

## II.   Motions to dismiss and for summary judgment [ECF Nos. 76, 77]

The focus of Eliason's suit has changed considerably since its initial filing. In his motion for declaratory judgment, Eliason claimed that the "gravamen of this action" was whether the County had the "power to remove a sitting, duly-elected constable from office."[43] But he now

---

[38] ECF No. 84.

[39] *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) ("Further, when we agree with the district court that a plaintiff has failed to show the likelihood of success on the merits, we 'need not consider the remaining three [*Winter* elements].'" (citation omitted) (alterations in original)).

[40] ECF No. 84 at 10.

[41] *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("At a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that it will be exposed to irreparable harm.").

[42] *Harris*, 729 F.3d at 944.

[43] ECF No. 41 at 1–2.

1  claims that the "central issue in this case is that NRS [§] 258.007 violates Title II of the

2  Americans with Disabilities Act and its attendant regulations."[44]  This substantive shift can be

3  traced to the Nevada Supreme Court's clarifying decision in *Clark County v. Eliason*, which

4  largely nullified the basis of his complaint because it held that neither defendant in this case had

5  the power to remove Eliason from office because his forfeiture was automatic.[45]  In light of that

6  ruling, the County moves to dismiss this action and the Commission renews its motion for

7  summary judgement, arguing that Eliason's suit cannot proceed as a matter of law.

8          Nevada's High Court's ruling has left the parties' motions and briefing in some disarray.

9  At the outset, Eliason's requests for declaratory and injunctive relief[46] to prevent "Clark County

10  from usurping the jurisdiction to adjudicate whether [he] has forfeited his office"[47] were

11  foreclosed by the Nevada Supreme Court's holding that he automatically forfeited his position

12  by failing to become POST certified.  Accordingly, his request that I "issue a writ of prohibition

13  prohibiting or enjoining Clark County from usurping the jurisdiction to adjudicate whether

14  Constable Eliason has forfeited his office"[48] is moot.  Eliason also fails entirely to address

15  whether his constitutional claims may proceed in light of the Supreme Court's ruling, which

16  implicitly blessed the "specific qualifications necessary to holding the office, such as educational

17  requirements or physical condition requirements."[49]  And, as both defendants argue and Eliason

18

---

19  [44] ECF No. 81 at 2.

20  [45] *Eliason*, 468 P.3d at 820.

   [46] Eliason labels these his first and second "claim[s] for relief."  ECF No. 1 at 5–6.

21  [47] *Id.* at ¶ 46.

22  [48] *Id.*

   [49] *Eliason*, 468 P.3d at 818.  In his initial opposition to the Commission's summary-judgment
23  motion, which he incorporates by reference in his renewed opposition, Eliason makes no
   mention and offers no defense of his constitutional claims.  *See* ECF Nos. 66, 83.

1 largely concedes, Eliason's remedies are now also moot: the Nevada Supreme Court already

2 divested the County of the "jurisdiction" to remove him, and further removal proceedings are

3 toothless because Eliason has already forfeited his position.  So I dismiss those claims and

4 requests for relief.

5       Nor am I convinced that Eliason's ADA claim can survive based on his complaint.

6 Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be

7 excluded from participation in or be denied the benefits of the services, programs, or activities of

8 a public entity."[50]  The United States Supreme Court recognizes both ADA-based disparate-

9 treatment claims—which turn on whether a protected trait motivated an employer's decision to

10 treat some people less favorably—and disparate-impact claims—which involve "employment

11 practices that are facially neutral in their treatment of different groups but that in fact fall more

12 harshly on one group than another and cannot be justified by business necessity."[51]  While

13 conceding that the statute is facially neutral,[52] Eliason nonetheless argues that "NRS [§] 258.007

14 discriminated against [him] on the basis of disability in violation of Title II of the ADA" by

15 requiring him to meet POST-certification requirements.[53]

16       But as the County points out, and Eliason declines to address, the statute, the County, and

17 the Commission are not responsible for the enforcement of NRS § 258.007.[54]  Eliason also

18 seemingly conflates NRS § 258.007's certification requirements with NAC § 289.200(1)'s

19 physical fitness requirements, arguing that "NRS [§] 258.007's physical agility requirement

20

21 [50] 42 U.S.C. § 12132.

[51] *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003).

22 [52] ECF No. 84 at 6.

23 [53] ECF No. 1 at ¶ 52.

[54] ECF No. 85 at 3.

10

imposes eligibility criteria that screen out individuals with disabilities."[55]  But neither the Legislature nor NRS § 258.007 impose an agility requirement.  Instead, the POST Commission imposes the physical-fitness requirement and provides prospective peace officers an opportunity to request exemption from those requirements.[56]  So while the Commission could arguably be accused of violating the ADA if it imposed this physical-fitness regulation without modification on otherwise qualified, disabled individuals to keep them from employment, Eliason does not plead anything resembling such a claim.  So I dismiss Eliason's ADA claim as well.

Given the convoluted nature of these proceedings, however, I find that the interests of justice warrant giving Eliason permission to amend his complaint.[57]  So I grant the County's motion to dismiss, dismiss Eliason's complaint without prejudice, and grant him leave to amend his complaint to re-assert his ADA-based and constitutional claims in light of the Nevada Supreme Court's ruling.  And because I dismiss Eliason's complaint, I deny the Commission's motion for summary judgment as moot.

**Conclusion**

IT IS THEREFORE ORDERED that **THE STAY** pending the Nevada Supreme Court's resolution of the certified question [ECF No. 71] **is LIFTED.**

IT IS FURTHER ORDERD that the County's motion to vacate the order granting a preliminary injunction **[ECF No. 75] is GRANTED and the preliminary injunction in this matter is DISSOLVED.**

---

[55] ECF No. 84 at 3.

[56] Nev. Admin. Code § 289.200(1).

[57] *Carrico v. City & Cnty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011).

11

IT IS FURTHER ORDERED that the County's motion to dismiss **[ECF No. 76] is GRANTED.**  Plaintiff Eliason's complaint is dismissed without prejudice and with leave to amend.

IT IS FURTHER ORDERED that the Commission's renewed motion for summary judgment **[ECF No. 77] is DENIED without prejudice.**

IT IS FURTHER ORDERED that Eliason's motion to modify the preliminary injunction **[ECF No. 84] is DENIED.**

IT IS FURTHER ORDERED that Eliason is directed to file his second amended complaint alleging any ADA-based and constitutional claims by March 15, 2021.  If he fails to do so, this case will be dismissed with prejudice.

_____
U.S. District Judge Jennifer A. Dorsey
Dated: March 3, 2021